IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHARLOTTE ABDULLAH,<br><br>**Plaintiff,**<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC<br><br>**Defendant.** | Civil Action File No.<br>5:12-cv-00369-CAR |

**OCWEN LOAN SERVICING, LLC'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant Ocwen Loan Servicing, LLC ("Ocwen") and files this Brief in Support of its Motion for Summary Judgment, showing this Court as follows:

**INTRODUCTION**

This is a dispute about letters and phone calls, brought by a debtor admittedly in default,[1] against her current loan servicer. Plaintiff filed this action alleging Ocwen violated the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) ("TCPA"), and the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 et

---

[1] See Dep. of Charlotte Abdullah, November 15, 2013, ("Pl.'s Dep.") 45:5-9 (admitting she has not made a payment on her mortgage loan since June of 2011). A true and correct copy of the Pl.'s Dep. is attached hereto as Exhibit A.

1

seq. ("FDCPA"), by attempting to collect "an alleged but nonexistent debt",[2] claiming she had no idea who Ocwen was, and that she thought they were trying to sell her a loan.[3] Seven days later, she filed a Bankruptcy Action listing Ocwen as her secured creditor.[4]

Four claims remain in this case.[5] Plaintiff brings a claim under § 227(b)(1)(B) of the TCPA based on her allegation that she has no business relationship with Ocwen and that Ocwen used an automated system to call her 33 times without her permission.[6] Plaintiff also brings three claims under the FDCPA, alleging: (1) Ocwen continued to call her after receiving her requests to cease communications in violation of § 1692c(c); (2) Ocwen never responded to her debt validation request in violation of 1692g(b) and (3) that Plaintiff was harassed by the 33 phone calls she received regarding an "alleged but nonexistent debt" in violation of 1692d(5).

The claims at issue in this case are highly fact-contingent and depend on Plaintiff's ability to put forward some evidence that: (1) Ocwen is not Plaintiff's

---

[2] Compl. ¶3 [Doc. 1].
[3] Compl. ¶11 ("Never did Plaintiff apply for a loan with Ocwen Loan Servicing....(again) What loan?")
[4] See Pl.'s Dep. 11:19-12:2; 51:20-52:10; Bankruptcy Petition No. 12-52674 at 15, attached as Exhibit A to Pl.'s Dep.
[5] Order on Defendant's Motion to Dismiss [Doc. 14 at 11] ("Plaintiff's claims under 47 U.S.C. § 227(b)(1)(B) and 15 U.S.C. § § 1692c(c), 1692d(5), and 1692g(b)may proceed.")
[6] Compl. ¶¶18, 21.

loan servicer; (2) Ocwen received Plaintiff's letters requesting communication cease and continued to call her; and (3) Ocwen never provided Plaintiff with a debt validation letter. The Parties have engaged in extensive discovery and, as set forth in detail below, Plaintiff cannot establish a single fact on which her case depends.

In fact, the record before this Court unequivocally establishes that (1) Ocwen is Plaintiff's Loan Servicer[7]; (2) there is no proof that Plaintiff sent any debt validation or call cessation letters prior to September of 2012[8] and Ocwen's last call to her was in August of 2012[9]; and (3) a debt validation letter was mailed to Plaintiff on October 10, 2012.[10] Plaintiff's failure to receive that letter was likely do to her admitted routine practice of throwing any communications from Ocwen in the trash.[11]

Because the record before this Court establishes there is no genuine issue of any fact to be tried, Ocwen moves this Court to enter summary judgment in its favor.

---

[7] See Affidavit of Peter Knapp ("Knapp Aff."), attached hereto as Exhibit B, ¶11.
[8] See Affidavit of Kristin Miller ("Miller Aff.") attached hereto as Exhibit C, ¶5-9; Knapp Aff. ¶11.
[9] Knapp Aff. ¶12.
[10] Knapp Aff. ¶10, Exhibit H October 10, 2012 Debt Validation Letter)
[11] See Pl.'s Dep. 47: 11-12, 19-21) (A: "…All the Ocwen mail probably went in the garbage") (Q "so you just started throwing the letters in the garbage? A:Yeah, it had nothing to do with me because I had nothing to do with no Ocwen).

# STATEMENT OF UNDISPUTED MATERIAL FACTS

## I.  Plaintiff's Debt – The Subject Loan

Plaintiff borrowed $83,600.00 (the "Loan") from Charter Capital Services, Inc. ("Charter") on October 28, 1999.[12]  Plaintiff executed a promissory note memorializing the transaction and promising to repay the Loan.[13]  To secure repayment of the Note, Plaintiff executed and delivered to Charter a security deed "Security Deed" conveying legal title and the power to sell the property if Plaintiff defaulted on repayment of the Loan.[14]

Plaintiff's Security Deed was subsequently assigned to Provident Bank, in November of 1999,[15] who subsequently assigned it to Wells Fargo Bank, National Association, successor by merger to Wells Fargo Bank Minnesota, National Association, f/k/a Norwest Bank Minnesota, National Association, solely in its capacity as Trustee for Provident Bank Home Equity Loan Asset-Backed Certificates, Series 1999-3 ("Wells Fargo" or "Investor") in August of 2012.[16]

---

[12] See Knapp Aff. ¶4; Note, attached as Exhibit B to Knapp Aff.
[13] See Pl.'s Dep. 19: 22-24.  While Plaintiff admits she signed the Note, she has made various allegations of forged documents on and off the record throughout this litigation.  See, e.g., Pl.'s Dep. 32:12-16.  This action, however, is not about the validity or invalidity of forged documents assigning Plaintiff's mortgage loan.  It is about the propriety and existence of specific phone calls and letters.  See generally Compl.
[14] See Knapp Aff. ¶5, Security Deed, attached as Exhibit C to Knapp Aff.
[15] See Knapp Aff. ¶6, First Assignment, attached as Exhibit D to Knapp. Aff.
[16] See Knapp Aff. ¶7, Second Assignment, Attached as Exhibit E to Knapp Aff.

## II. Ocwen's Role As Servicer of Plaintiff's Loan

While Wells Fargo is the owner or investor of Plaintiff's Loan, Ocwen services the Loan on behalf of Wells Fargo. The Power of Attorney authorizing Ocwen to service the Loan on behalf of the Investor/Trustee for the trust in which Plaintiff's Loan is held is attached to the Knapp Aff. as **Exhibit A**.[17]

Ocwen began servicing Plaintiff's Loan on or around October of 2011, after acquiring servicing rights from Litton Loan Servicing LLC ("Litton").[18] By the time Plaintiff's loan transferred to Ocwen in October of 2011, it was already in default.[19] Having received the Loan in Default, Ocwen qualifies as debt collector under the FDCPA. See 15 U.S.C. 1692(a)(6)(F).[20]

On October 14, 2011, Litton and Ocwen sent Plaintiff a letter entitled a "Notice of Servicing Transfer (RESPA) and Welcome to Ocwen Loan Servicing",

---

[17] After its origination in 1999, the Loan was placed or securitized into a trust entitled Provident Bank Home Equity Loan Asset Backed Certificates, Series 1999-3, as evidenced by the endorsement on the original Note. (Exhibit B to Knapp Aff. at 3). Exhibit A to the Power of Attorney Lists Provident Bank Home Equity Loan Asset Backed Certificates, Series 1999-3 among the trusts for which Ocwen was appointed Servicer on behalf of the Investor/Trustee. (Exhibit A to Knapp Aff. at 3). (Knapp Aff. ¶3)

[18] Knapp Aff. ¶8

[19] See Pl.'s Dep. 45:5-9 (testifying that she has not made a payment on her mortgage loan since June of 2011).

[20] Although Ocwen's counsel originally believed Plaintiff's Loan was not in default when Ocwen acquired it, subsequent investigation and discovery has revealed that is not the case.

5

notifying Plaintiff that her Loan was transferring to Ocwen for servicing.[21] While Plaintiff contends she never received this transfer letter,[22] she also admits that she routinely threw mail from Ocwen in the garbage without reading it (Pl.'s Dep. 47: 11-12, 19-21) (A: "…All the Ocwen mail probably went in the garbage") (Q "so you just started throwing the letters in the garbage? A:Yeah, it had nothing to do with me because I had nothing to do with no Ocwen).

### III. Communications Between Ocwen and Plaintiff

As it does with all loans it services, Ocwen keeps and maintains a Comments Log and Transaction History ("Transaction History") which provides a record of all activity taken in connection with servicing Plaintiff's Loan.[23] The Transaction History provides a record of any and all written correspondence received from or sent to Plaintiff and logs all inbound and outbound telephone calls to borrower.[24]

**Letters**

Plaintiff contends she sent three separate letters via certified mail requesting that Ocwen cease debt collection calls: respectively dated March 4, 2012,

---

[21] See Knapp Aff. ¶8, Notice of Servicing Transfer, attached to Knapp Aff. as Exhibit F.
[22] Pl.'s Dep. 46:22-24.
[23] See Knapp Aff. ¶9
[24] See Knapp Aff. ¶¶9,12, Transaction History, attached to Knapp Aff. as Exhibit G.

September 7, 2012 and September 27, 2012.[25] However, only the September 7 and September 27, 2012 letters have tracking numbers that United States Postal Service online tracking system confirms were delivered.[26] Moreover, Ocwen's Transaction History confirms Ocwen did not receive any written communication from Plaintiff in March of 2012.[27]

On October 3, 2012, Ocwen received written correspondence from borrower requesting debt validation.[28] Thereafter, on October 10, 2012, a debt validation letter was sent to Plaintiff's address.[29] Again, Plaintiff denies receiving this letter,[30] but concedes that it may have gone in the trash:

> A: All the Ocwen mail probably went in the garbage…
>
> Q: So you just started throwing the letters in the garbage?
>
> A: Yeah, it had nothing to do with me because I had nothing to do with no Ocwen
>
> Q: But you did say you specifically threw anything from Ocwen in the trash right?

---

[25] See Affidavit of Kristin S. Miller, attached hereto as Exhibit C ("Miller Aff.") ¶5, the letters are attached to the Miller Affidavit as Exhibits A, C, and E, respectively.
[26] See Miller Aff. ¶¶6-9, copies of tracking reports for all three letters are attached to Miller Aff. as Exhibits B, D, and F respectively.
[27] See Knapp Aff. ¶11.
[28] See Knapp Aff. ¶10
[29] Id., a true and correct copy of that letter is attached to Knapp Affidavit as Exhibit H.
[30] See Pl.'s Dep. 66:19-67:14.

7

> A: Any type of paper, if it was among that, if it looked like it was a debt…

Pl.'s Dep. 47:11-12, 19-22, 65:11-14.

### Phone Calls

As stated above, the Transaction History maintained by Ocwen logs all inbound and outbound telephone calls to Plaintiff; since Ocwen has been servicing Plaintiff's Loan, a total of 34 calls have been made to Plaintiff., spanning a period of December of 2011 to August of 2012.[31] The last outbound call made to Plaintiff was in August of 2012.[32]

### PROCEDURAL HISTORY

Plaintiff filed this action on September 14, 2012.[33] Ocwen filed a motion to dismiss on January 22, 2013.[34] On April 4, 2013, this Court issued an Order granting in part and denying in Part Ocwen's motion, allowing Plaintiff's claims under section 47 U.S.C. § 227(b)(1)(B) of the TCPA and sections 15 U.S.C. § § 1692c(c), 1692d(5), and 1692g(b) of the FDCPA to proceed.[35] The discovery period has now closed and Plaintiff has failed to produce a scintilla of evidence to substantiate her claims. Thus, Plaintiff's remaining claims are ripe for summary judgment.

---

[31] See Knapp Aff. ¶12
[32] Id.
[33] [Doc. 1].
[34] [Doc. 8].
[35] [Doc. 14].

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Although the Court must draw all reasonable inferences in the light most favorable to the nonmoving party, the Court must only draw those inferences that are reasonable. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002); Grice Constr., LLC v. Foremost Insur. Co., 2009 WL 901133 *2 (N.D. Ga., Mar. 31, 2009). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). If the evidence is merely colorable, or not significantly probative, summary judgment should be granted. See Matsushita, 475 U.S. at 586.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). However, if the non-movant's response consists of nothing "more

than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir.1981).

## ARGUMENT AND CITATION OF AUTHORITIES

Ocwen moves this Court for summary judgment as the record before this court shows that (1) Ocwen is Plaintiff's Loan servicer and debt collector and therefore exempt from the TCPA's prohibitions; and (2) Ocwen did not violate, by act or omission, any provision of the FDCPA.

**I. Plaintiff's Claims Under the TCPA Fail as A Matter of Law Because Ocwen Services Plaintiff's Loan The Calls were Legitimate Debt Collection Calls Exempt from TCPA.**

• Plaintiff alleges Ocwen violated 47 U.S.C. § 227(b)(1)(B) of the TCPA by using an automated telephone dialing system to call her telephone line 33 times and leaving recorded messages without her permission.[36] However, the TCPA does not apply to the calls at issue in this case, which were legitimate debt collection calls from a loan servicer to a debtor.

Section 227(b)(1)(B) prohibits automatic calls to any residential telephone lines without the prior express consent of the "called party," unless the call is for emergency purposes or otherwise exempted by a Federal Communications Commission ("FCC") rule or order. The FCC has created a regulatory exemption applicable to the debt-collection calls in this case. Specifically, the FCC exempts

---

[36] Compl. ¶21.

from the TCPA's statutory prohibition against pre-recorded calls any call "made to any person with whom the caller has an established business relationship at the time the call is made[.]" 47 C.F.R. 64.1200(a)(2)(iv); see also Meadows v. Franklin Collection Serv., Inc., 414 F. App'x 230, 235 (11th Cir. 2011). The FCC has also clarified that "all debt collection circumstances involve a prior or existing business relationship." Id. (internal citations omitted)

The record before this unequivocally establishes that Ocwen is the servicer of Plaintiff's mortgage Loan and was contacting with regard to her debt. Accordingly, Ocwen did not violate the TCPA because its debt-collection calls are exempt from TCPA's prohibitions. Accordingly, Plaintiff's TCPA claim is subject to summary judgment.

## II. **Plaintiff's FDCPA Claims Fail.**

To prevail on an FDCPA claim, a plaintiff must establish that: "(1) she has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." Frazier v. Absolute Collection Service, Inc., 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011 (internal citations omitted). Here, Ocwen does not dispute the first and second elements are met.

However, the record before this Court establishes unequivocally Plaintiff cannot make out the third critical element of an FDCPA claim because Ocwen has neither engaged in a prohibited Act or failed to perform any requirement imposed by the FDCPA.

A.  Plaintiff's Claim under § 1692c(c) Fails.

Plaintiff claims Ocwen violated §1692c(c) of the FDCPA by "plac[ing] no less than 33 telephone calls to the Plaintiff's telephone after receiving written notice from the Plaintiff to cease communications."[37] However, the record before this Court shows that the only letters Plaintiff can establish she sent (via USPS tracking numbers on the letters themselves) are the letters dated September 7, 2012 and September 27, 2013.[38] The last call made to Plaintiff was in August of 2012.[39]

Section 1692c(c) of the FDCPA prohibits a debt collector from communication with a consumer after the consumer notifies the debt collector in writing to cease communications. Plaintiff contends she sent three separate letters via certified mail requesting that Ocwen cease debt collection calls dated March 4, 2012, September 7, 2012 and September 27, 2012.[40] However, only the September 7 and September 27, 2012 have tracking numbers that United States Postal Service

---

[37] Compl. ¶24.
[38] See Miller Aff.¶¶ 5-9, Exhibits A-F thereto.
[39] See Knapp. Aff ¶12.
[40] [Doc 10-1 at 1-3]; See Miller Aff. ¶5.

online tracking system confirms were delivered.[41]  Moreover, Ocwen's internal records reflect no communications received from Plaintiff in March of 2012.

Plaintiff cannot survive summary judgment on this issue by offering a letter dated March of 2012 with no external or internal indicia or reliability.  Plaintiff produced this letter for the first time after Ocwen argued in its motion to dismiss that the cessation letter attached to Plaintiff's Complaint was dated September 7, 2012 and that the last call Plaintiff alleged to have received was on September 11, 2012.[42]  Plaintiff's March 2012 letter cannot be verified, is not supported by any evidence whatsoever demonstrating that it was actually sent to and received by Ocwen, and should not be considered by this Court.  Moreover, the actual evidence in the record demonstrates clearly that: (a) Ocwen did not receive the letter; and (b) no letter bearing the tracking number on the alleged letter was sent to or received by Ocwen.

Accordingly, Ocwen is entitled to summary judgment on Plaintiff's claim under § 1692c(c).

**B.**     **Plaintiff's Claim Under §1692d(5) Fails.**

Plaintiff claims that Ocwen violated the anti-harassment provision of the FDCPA, section 1692(d)(5), by calling her 33 times allegedly relating to the

---

[41] See Miller Aff. ¶¶6-9, copies of tracking reports for all three letters are attached to Miller Aff. as Exhibits B, D, and F respectively.
[42] [Doc. 8-1 at 10].

13

collection of a debt that "Plaintiff did not owe."[43] Plaintiff also alleges these phone calls persisted after she had notified Defendant to stop harassing her.[44]

Under 15 U.S.C. § 1692(d), a debt collector is prohibited from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including "[c]ausing the telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692(d)(5). Many courts follow the Federal Trade Commissions' interpretations of 'repeatedly' to mean "calling with excess frequency" and that 'continuously' refers to "making a series of calls, one right after the other." Hicks v. America's Recovery Solutions, LLC, 816 F.Supp.2d 509, 515 (N.D. Ohio 2011) (citations omitted).

As there is no bright line rule regarding the number of calls that create an inference of intent to harass, courts consider whether "the nature of telephone calls, including their frequency, substance, or the place to which they are made, provides grounds to infer a debt collector's intent to annoy, abuse, or harass without any other evidence of the debt collector's motive in calling." Brown v. Hosto & Buchan, PLLC, 748 F.Supp.2d 847, 852 (W.D. Tenn. 2010).

---

[43] Compl. ¶3.
[44] Compl. ¶24.

Courts have routinely refused to find issues of fact and granted summary judgment in cases where there were significantly more and more frequent telephone calls than at issue here. See, e.g., Tuck v. The CBE Group, Inc., 710 F.Supp.2d 1301, 1303 (M.D. Fla. 2010) (granting summary judgment in favor of debt collector, despite 57 calls to non-debtor, including 7 in one day); Jones v. Rash Curtis & Assocs., No. 10-cv-0225, 2011 WL 2050195 (N.D. Cal. Jan. 3, 2011) (finding not violation where 179 calls were made in over a year); Arteaga v. Asset Acceptance, LLC, 733 F.Supp.2d 1218, 1229 (E.D. Cal. 2010) (allegations of "daily" or "nearly daily" phone calls do not raise an issue of fact to preclude summary judgment); Jiminez v. Accounts Receivable Mgmt, Inc., No. CV 09-9070-GW (AJWx), 2010 WL 582920 (C.D. Cal. Nov. 15, 2010) (69 calls over 115 days, no live contact, and no more than 2 calls a day is not a violation); Waite v. Fin. Recovery Serv., Inc., No. 8:09-cv-02336-T-33AEP, 2010 WL 5209350 (M.D. Fla. Dec. 16, 2010) (132 calls over 7 months was not a violation).

Even if Plaintiff were able prove that she sent her March 14, 2014 letter, which she has not and cannot, she still would not have a viable claim under section 1692(d)(5) because she cannot prove that (i) she did not have a debt with Ocwen, (ii) the calls were harassing (iii) the calls were intimidating, (iv) and the calls were placed at inappropriate times.

As an initial matter and as previously discussed in great length, the debt was not "non-existent", Plaintiff admittedly owed it and had not paid it.[45] Moreover, Ocwen was the proper party to collect it.[46] Additionally, the calls in this matter were not harassing. Indeed, only thirty-four calls were made to Plaintiff between December 2011, when Ocwen obtained servicing rights to Plaintiff's loan, and August of 2012, a time period of nine months.[47] Aff. of Knapp, ¶ 12. During all thirty-four phone calls the representative of Ocwen was nothing but polite and respective in the voicemails left on Plaintiff's machine; Plaintiff has produced no evidence to the contrary.

While Plaintiff argues that these telephone calls were unwelcomed, that alone is insufficient to establish a violation under the FDCPA. See Durthaler v. Accounts Receivable Management, Inc., 854 F.Supp.2d 485, 492 (S.D. Ohio 2012) ("[a]ny call from a debt collector may be presumed unwelcome, but that alone is insufficient to constitute a violation of the FDCPA")(internal citation an quotations omitted). Given the totality of the circumstances in this matter, and Plaintiff's sheer lack of evidence showing harassment or intent to harass, this Court should grant summary judgment in favor of Ocwen on Plaintiff's §1692d(5) claim.

---

[45] Pl.'s Dep. 45:5-9.
[46] See generally Knapp Aff.
[47] See Knapp Aff. ¶12

**C.     Plaintiff's Claim under §1692g(b) Fails**

Plaintiff claims Ocwen violated 1692(g)(b) by failing to respond to her debt validation letter and continuing with collection activities without providing a written validation of debt. (Compl. ¶17, 25.). However, Plaintiff's allegations are demonstrably false, Ocwen sent Plaintiff a debt validation letter despite her failure to timely dispute the debt.

Pursuant to the FDCPA, a consumer has thirty days of the initial communication from a debt collector to dispute the debt or any portion thereof. See generally 15 U.S.C. § 1692(g). 15 U.S.C. § 1692(g)(b) states in relevant part that "[i]f the consumer notifies the debt collector in writing within the third-day period described in subsection (a) of this section that the debt … is disputed … the debt collector shall cease collection of the debt .. until the debt collector obtains verification of the debt" 15 U.S.C. § 1692(g)(b); see also Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 323 F.Supp.2d 1344, 1349 (N.D. Ga. 2003) (stating that "[t]he FDCPA requires debt collectors to include a validation notice in the debt collection letter which states that the debtor has 30 days to dispute the debt".).

Here, Ocwen sent its standard "Welcome Letter" to Plaintiff on November 4, 2011, within five days of the transfer of servicing on November 1, 2011.[48]  . Plaintiff, however, failed to dispute her mortgage debt within the specified thirty

---

[48] Knapp Aff. , Exhibit G

17

day time period.  Even though Plaintiff claims to have sent two separate letters disputing the above referenced debt on March 14, 2012 and September 7, 2012, both are clearly outside the required time frame pursuant to 15 U.S.C. § 1692(g)(a)-(b).

However, setting aside Plaintiff's failure to dispute the debt within the prescribed window, Ocwen did not violate 15 U.S.C. § 1692(g)(b).  As evidenced by the Transaction History, on October 3, 2012, Ocwen received written correspondence identified as "written dispute correspondence" sent by Plaintiff on September 27, 2012.[49]  Thereafter, on October 10, 2012, Ocwen sent a timely and detailed written response to Plaintiff's address.[50]  Plaintiff claims to have also sent a March 14, 2012 dispute letter, however, there is absolutely no indication that this letter was received by Ocwen or even sent by Plaintiff.  As noted above the tracking number cannot be found on the United States Postal Service website.[51]  In addition, Ocwen's contemporaneously maintained logs reflect no such letter.[52]

Therefore, based upon the evidence before this Court, there is no dispute of any genuine issue of material fact and Ocwen is entitled to summary judgment as a matter of law.

---

[49] Knapp Aff. ¶10.
[50]. Knapp Aff. ¶10; Exhibit H to Knapp Aff.
[51] Miller Aff. ¶6
[52] Knapp Aff. ¶11, Exhibit G to Knapp Aff.

## CONCLUSION

For the reasons set forth above, Ocwen moves this Court for summary judgment on all Plaintiff's remaining claims.

Respectfully submitted, this 6th day of February 2014.

/s/ Dylan W. Howard
Dylan W. Howard
Georgia Bar No. 370267
Kristin S. Miller
Georgia Bar No. 805833
*Attorneys for Ocwen Loan Servicing, LLC*

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**
Monarch Plaza, Suite 1600
3414 Peachtree Road, N.E.
Atlanta, Georgia 30326
Phone: (404) 577-6000
Facsimile: (404) 221-6501
dhoward@bakerdonelson.com
ksmiller@bakerdonelson.com

# CERTIFICATE OF SERVICE

I have this day served upon all necessary parties of record with a copy of the foregoing **OCWEN LOAN SERVICING, LLC'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** by filing the same via the CM/ECF online filing system with the U.S. District Court for the Middle District of Georgia and by mailing a copy via U.S. Mail with adequate postage affixed thereto to:

>   Charlotte Abdullah, *pro se*
>   112 Town Creek Road
>   Eatonton, Georgia 31024

This 6th day of February, 2014.

>   /s/ Dylan W. Howard
>   Dylan W. Howard
>   Georgia Bar No. 370267
>   *Attorney for Defendant Ocwen Loan Servicing, LLC*

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
Suite 1600, Monarch Plaza
3414 Peachtree Road, NE
Atlanta, Georgia 30326
Phone: 404-577-6000
Fax:  404-221-6501
Email: dhoward@bakerdonelson.com