**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **CHARLOTTE ABDULLAH,** | : | |
| | : | |
| **Plaintiff,** | : | **CASE NO.** |
| **v.** | : | **5:12-cv-369 (CAR)** |
| | : | |
| **OCWEN LOAN SERVICING, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

_____

<u>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff Charlotte Abdullah, proceeding *pro se*, brings this consumer action contending Defendant Ocwen Loan Servicing, Inc. (Ocwen) engaged in harassing telephone calls in an attempt to collect a debt, in violation of the Telephone Consumer Protection Act (TCPA) and the Fair Debt Collection Practices Act (FDCPA).  Before the Court is Defendant Ocwen's Motion for Summary Judgment.  After fully considering the matter, the Court finds Ocwen is entitled to summary judgment on Plaintiff's TCPA claim, but genuine issues of material fact exist as to Plaintiff's FDCPA claims.  Thus, Ocwen's Motion for Summary Judgment [Doc. 37] is **GRANTED IN PART** and **DENIED IN PART**.

**LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must

be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[2]  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3]  When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion.[4]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[5]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[3] *See id.* at 249-52.
[4] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).
[5] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

material fact.[6]  This evidence must consist of more than mere conclusory allegations or legal conclusions.[7]

As a *pro se* litigant, Plaintiff is held "to a less stringent standard than formal pleadings drafted by lawyers."[8]  Nevertheless, Plaintiff's *pro se* status "does not exempt [her] from compliance with relevant rules of procedural and substantive law," including those applicable on summary judgment.[9]

## BACKGROUND

Plaintiff Charlotte Abdullah borrowed $83,6000.00 (the "Loan") from Charter Capital Services, Inc. ("Charter") on October 28, 1999.  In connection therewith, she executed a promissory note promising to repay the Loan to Charter and its successors and assigns.  Plaintiff also executed a security deed securing repayment of the Loan with her property, Lot 157 Town Creek, Eatonton, GA 312124.  On November 10, 1999, Charter assigned Plaintiff's security deed to Provident Bank.  Thereafter, Provident Bank assigned Plaintiff's security deed to Wells Fargo.

Although Wells Fargo is the owner of Plaintiff's Loan, Defendant Ocwen services the Loan on behalf of Wells Fargo.  Ocwen acquired the servicing rights from Litton

---

[6] *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477 U.S. at 324-26.

[7] *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

[8] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[9] *Hillemann v. Univ. of Cent. Fla.*, 411 F. Supp. 2d 1354, 1358-59 (M.D. Fla. 2004), *aff'd* 167 F. App'x 747 (11th Cir. 2006) (internal quotation omitted).

Loan Servicing LLC ("Litton").  On October 14, 2011, Litton mailed Plaintiff a letter entitled "Notice of Servicing Transfer (RESPA) and Welcome to Ocwen Loan Servicing," notifying Plaintiff that her Loan would be transferred to Ocwen for servicing effective November 1, 2011.  Plaintiff's Loan was already in default when it was transferred to Ocwen.

After acquiring Plaintiff's Loan, Ocwen began making telephone calls to Plaintiff's home regarding debt collection on the Loan.  Plaintiff states she sent three separate letters requesting debt validation and that Ocwen cease the debt collection calls.  Plaintiff testifies that she mailed the first letter to Ocwen on March 14, 2012.  In its regular course of business, Ocwen keeps and maintains a Comments Log and Transaction History recording the written correspondence received from or sent to borrowers and logging all inbound and outbound telephone calls to borrowers.  Ocwen's Transaction History does not show that Ocwen received any written correspondence from Plaintiff in March 2012.

Ocwen did not respond to Plaintiff's March 2012 debt validation request and continued to make telephone calls to Plaintiff's home regarding debt collection on her Loan.  Ocwen's Transaction History shows that it made a total of 34 telephone calls to Plaintiff's residence between January and August 2012.  Plaintiff also kept logs of

Ocwen's telephone calls to her residence.  Her logs show Ocwen made 63 telephone calls to her residence between February and September 19, 2012, with 61 of those calls occurring at different times and dates than the 34 calls reflected by Ocwen's records. Thus, viewing the facts in the light most favorable to Plaintiff, she received 97 telephone calls from Ocwen between January 2012, and September 19, 2012, regarding debt collection of her Loan.  Plaintiff's records also reflect Ocwen twice called her on a Sunday.  Ocwen placed most of the calls to Plaintiff using an automated dialer capable of continuously dialing and leaving messages without human interaction.  Indeed, Plaintiff testifies that she did not answer most of the calls which resulted in pre-recorded messages left on her answering machine.  When she did answer the calls, most of the time she hung up immediately when she realized it was Ocwen.  Plaintiff states that she spoke to a representative on a few occasions and each time told the representative to stop calling her, but Ocwen continued to call.

Due to the "harassing" telephone calls, Plaintiff testifies that she mailed Ocwen a second letter on September 7, 2012, and a final letter on September 27, 2012, continuing to request debt validation and that Ocwen cease the telephone calls.  Ocwen's records reflect that it received a written correspondence from Plaintiff on October 3, 2012, requesting debt validation.  Thus, on October 10, 2012, Ocwen responded to Plaintiff's

request and mailed a validation letter to her home address.  Plaintiff denies receiving this letter.

### DISCUSSION

Plaintiff filed this action claiming Ocwen violated the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) (TCPA), and the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA), by "repeatedly harassing her in attempts to collect an alleged but nonexistent debt."[10]   As explained below, Ocwen is entitled to summary judgment on Plaintiff's TCPA claim.  However, because genuine issues of material fact exist as to each of Plaintiff's claims under the FDCPA, summary judgment on those claims must be denied.

**<u>Plaintiff's Claim under the TCPA</u>**

Plaintiff alleges Ocwen violated 47 U.S.C. § 227(b)(1)(B) of the TCPA by using an automated telephone dialing system to call her telephone line and leave recorded messages without permission.  Ocwen's telephone calls, however, are exempt from the TCPA's prohibitions because Ocwen is the servicer of Plaintiff's Loan and was contacting her in regard to her debt.

Section 227(b)(1)(B) prohibits automatic calls to any residential telephone lines without the prior express consent of the "called party," unless the call is for emergency

---

[10] Compl. ¶3.

6

purposes or otherwise exempted by a Federal Communications Commission ("FCC") rule or order.[11]   One exemption is for any call "made to any person with whom the caller has an established business relationship at the time the call is made."[12]   "[T]he FCC has determined that all debt-collections circumstances are excluded from the TCPA's coverage."[13]

The record unequivocally establishes that Ocwen is the servicer of Plaintiff's Loan and was contacting her in regard to her debt. Thus, Ocwen did not violate the TCPA, and Plaintiff's claim fails as a matter of law.

**Plaintiff's FDCPA Claims**

Plaintiff asserts Ocwen violated three provisions under the FDCPA:  § 1692c(c), § 1692d(5), and § 1692g(b).  To prevail on an FDCPA claim, Plaintiff must establish that "(1) she has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA."[14]   Ocwen does not dispute that the first two elements are met.

---

[11] The FCC prescribes and implements regulations governing the TCPA's provisions concerning automated phone calls.  *See* 47 U.S.C. § 229.

[12] *Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 235 (11th Cir. 2011) (quoting 47 C.F.R. 64.1200(a)(2)(iv) (internal quotations omitted).

[13] *Id*.

[14] *Frazier v. Absolute Collection Srvc., Inc.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011) (internal citations omitted).

Instead, Ocwen argues that it has neither engaged in a prohibited act nor failed to perform any requirement imposed by the FDCPA.  The Court, however, is unpersuaded by Ocwen's arguments and finds genuine issues of material fact exist to preclude summary judgment on each of Plaintiff's claims.

**Plaintiff's Claim under § 1692c(c)**

Plaintiff claims Ocwen violated § 1692c(c) by continuing to call her residence after receiving written notice from Plaintiff in March 2012 to cease all communications. Section 1692c(c) of the FDCPA prohibits a debt collector from communicating with a consumer after the consumer notifies the debt collector in writing to cease communications.  Ocwen does not dispute that it continued to place telephone calls to Plaintiff after March 2012.  The dispute centers on the authenticity and reliability of Plaintiff's March 14, 2012 letter notifying Ocwen to stop communications.

Plaintiff testifies that she personally mailed Ocwen a letter on March 14, 2012, requesting that all communications stop. The record includes a copy of the signed and dated letter addressed to Ocwen, together with a copy of a blank United States Postal Service delivery confirmation receipt.  Ocwen contends the letter has no external or internal indicia of reliability and therefore should not be considered by the Court. Ocwen points to its Transaction History which shows no communications were

received from Plaintiff in March 2012.  Moreover, Ocwen attaches an affidavit from its attorney averring that the postal service could not confirm the tracking number on the confirmation receipt for this letter.

Despite Ocwen's arguments to the contrary, a question of material fact clearly exists as to whether Plaintiff sent and Ocwen received this letter. "It is a long established presumption that a letter properly addressed, stamped, and mailed was received by the individual to whom the letter the addressed."[15] Here, Plaintiff has presented sufficient evidence that the March 14th letter was properly addressed and mailed to Ocwen.  Thus, a presumption arises that Ocwen received it.  Ocwen, however, has presented evidence to rebut the presumption.  Although the "mere denial of receipt" is insufficient to rebut the presumption, "direct testimony of nonreceipt, particularly in combination with evidence that standardized procedures are used in processing claims, is sufficient to support a finding that the mailing was not received, and thereby rebut the presumption accorded a proper mailing."[16]  Ocwen not only denies receiving the letter but points to its business records showing that no letter was

---

[15] *Brown v. Neely Truck Line, Inc.*, 884 F. Supp. 1534, 1541 (M.D. Ala. 1995) (citing *Hagner v. United States*, 285 U.S. 427 (1932)); *see also In re Farris*, 365 F. App'x 198, 199 (11th Cir. 2010) ("The common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee.").

[16] *Kin Chun Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 133, 1348 (N.D. Ga. 2013) (citations omitted).

received in March 2012.  This conflicting evidence must be weighed and determined by the factfinder, making summary judgment inappropriate for this claim.

**Plaintiff's Claim under § 1692d(5)**

Plaintiff also alleges that Ocwen repeatedly and continuously called her with the intent to annoy, abuse, or harass in violation of § 1692d(5).  Under § 1692d(5), a debt collector is prohibited from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt[,]" including "[c]ausing the telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."[17]  "In enacting the FDCPA, Congress meant to ensure that 'every individual, whether or not he owes the debt has a right to be treated in a reasonable or civil manner.'"[18]  The Eleventh Circuit has established that "claims under § 1692d should be viewed from the perspective of a consumer whose circumstances make[] him relatively more susceptible to harassment, oppression, or abuse."[19]

"When determining if a debt collector intends to harass a consumer, courts . . . consider the frequency, duration, volume, and content of the debt collector's phone

---

[17] 15 U.S.C. § 1692d(5).

[18] *Meadows,* 414 F. App'x at 233 (quoting *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1169, 1178 (11th Cir. 1985)).

[19] *Jeter,* 760 F.2d at 1179.

10

calls, as well as whether the debt collector called weekends and holidays or called back being told to stop.  In total, the debt collector's 'behavior [must be] intended to harass, upset, humiliate, or panic a debtor.'"[20]  "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury."[21]

Peter Knapp, a loan analyst with Ocwen, states in a sworn declaration that Ocwen's records kept in the usual course of business show that a total of 34 calls were made to Plaintiff since Ocwen began servicing the Loan, with the final outbound call being made on August 16, 2012.  Knapp also states that Ocwen received no written communications from Plaintiff in March of 2012, and thus Ocwen did not receive Plaintiff's March 2012 written request that Ocwen cease all communications.

Plaintiff, however, testifies that she, too, kept logs of the telephone calls Ocwen placed to her residence.  Plaintiff's logs show that Ocwen called her 63 times—61 of those calls occurring at different times than Ocwen's records reflect and two of those calls being placed on a Sunday.  Moreover, as explained previously in this Order, a genuine issue of material fact exists as to whether Plaintiff sent and Ocwen received Plaintiff's March 14 letter requesting that Ocwen cease all telephone calls.  In addition,

---

[20] *Barnes v. Seterus, Inc.*, Case No. 13-81021-CV, 2013 WL 6834720, 3 (S.D. Fla., Dec. 26, 2013) (quoting *Chalik v. Westport Recovery Corp.*, 677 F. sup. 2d 1322, 1329-30 (S.D. Fla. 2009)).
[21] *Jeter*, 760 F.2d at 1179.

11

Plaintiff testifies that she told Ocwen's representatives multiple times on the telephone to stop calling her, but Ocwen continued to call, making her feel harassed.

Based on this evidence, genuine issues of material fact remain as to the number of times Ocwen called Plaintiff's residence, whether Ocwen continued to call after being asked to stop, whether Ocwen called on weekends, and thus whether Ocwen caused Plaintiff's telephone to ring repeatedly or continuously with the intent to annoy, abuse, or harass.[22]  Accordingly, summary judgment is inappropriate for this claim.

### Plaintiff's Claims under § 1692g(b)

Plaintiff finally alleges that Ocwen violated section 1692g(b) of the FDCPA by failing to respond to her March 2012 debt validation letter and continuing with collection activities without providing a written validation of debt.  The FDCPA requires that debt collectors provide consumers with a validation of debt notice "within five days after the initial communication with a consumer in connection with the collection of any debt."[23]  The notice must contain certain information including a statement that the consumer must dispute the debt within 30 days after receipt of the notice, or the debt will be assumed to be valid by the debt collector.[24]

---

[22] *See Meadows,* 414 F. App'x at 233-34.
[23] 15 U.S.C. § 1692g(a).
[24] 15 U.S.C. § 1692g(a)(3).

Section 1692g(b) provides that if a consumer notifies the debt collector in writing within 30 days of receipt of an initial communication regarding collection of a debt that the debt is disputed, the debt collector must "cease collection of the debt" until it "obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."[25]  Thus, to sustain a claim pursuant to § 1692g(b), the consumer must dispute the debt or any portion thereof within 30 days of receipt of the initial communication from the debt collector.[26]

Ocwen first argues Plaintiff's claim under § 1692g(b) must be dismissed because Plaintiff failed to demand validation within the required thirty-day time period after receipt of Ocwen's initial communication letter.  Ocwen claims it sent its standard "Welcome Letter" to Plaintiff on November 4, 2011, within the required five-day period after Plaintiff's Loan was transferred to Ocwen on November 1, 2011.  Thus, even accepting Plaintiff's claim that she sent the March 14, 2012 letter disputing the debt, Plaintiff clearly sent the letter outside the 30-day time frame from receipt of Ocwen's November 4, 2011 initial communication letter.

---

[25] 15 U.S.C. § 1692g(b).

[26] *Id.*

Plaintiff, however, testifies she never received the initial communication letter. Indeed, from the evidence in the record it is unclear whether Ocwen sent the November 4, 2011 letter to Plaintiff.  The so-called November 4, 2011 letter cited by defense counsel in the brief supporting the Motion for Summary Judgment is actually a letter dated October 14, 2011.  This letter is not from Ocwen but from Litton, the prior servicer of Plaintiff's Loan, informing Plaintiff her Loan would be transferred to Ocwen on November 1, 2011.[27]  This letter contains none of the required information pursuant to § 1692g(a). Although a copy of a November 4, 2011 letter is attached to Plaintiff's deposition, nowhere in the record is this letter verified or authenticated.  In his sworn affidavit, Peter Knapp, the loan analyst for Ocwen, verifies only the October 14, 2011 letter, not the November 4, 2011 letter.  Moreover, Knapp avers that Ocwen began servicing Plaintiff's Loan in October 2011, but the evidence clearly reveals Ocwen began servicing the Loan on November 1, 2011.  Thus, there exists an issue of fact as to whether Ocwen even sent the requisite initial communication letter informing Plaintiff that she was required to dispute the debt within 30 days of receipt of the notice.

The Court notes that Plaintiff does not allege Ocwen violated § 1692g(a) by failing to send the required initial communication letter.  If it is found that Ocwen failed

---

[27] Motion for Summary Judgment, p. 17 [Doc. 37-1]; *Knapp Affidavit, Ex. G* [Doc. 37-3].

to send the required notice under § 1692g(a), an issue arises as to whether Plaintiff can even maintain her claim under § 1692g(b).  It appears § 1692g(b) is dependent upon the conditions precedent of § 1692g(a) having occurred. "If the collector never sends the debtor a § 1692g(a) notice, then the thirty-day period never commences or occurs, which means that it is impossible for the debtor to demand validation within that (non-existent) thirty-day period. Under these circumstances, § 1692g(b)'s requirement that the collector validate the debt is never triggered."[28] Thus, it appears Plaintiff's failure to allege a violation of § 1692g(a) may be fatal to her claim under § 1692g(b).  This argument, however, has not been addressed by the parties.  If it is determined that Ocwen failed to send the initial communication notice as required under § 1692g(a), the Court will address any arguments under this theory before trial.

Ocwen alternatively argues this claim must be dismissed because, as a matter of law, Ocwen did not violate § 1692g(b).  Ocwen dismisses Plaintiff's claim that she sent the March 2012 letter and states it only received Plaintiff's September 27, 2012 letter disputing the debt, and, in accordance with the statute, sent a timely and detailed written response on October 10, 2012.  As this Court has already explained, genuine issues of material fact exist as to whether Plaintiff sent and Ocwen received the March

---

[28] *See Allen v. Bank of America, N.A.*, Case. No. 11C9259, 2012 WL 5412654, *5 (N.D. Ill, Nov. 6, 2012).

15

2012 letter.  It is undisputed Ocwen continued to contact Plaintiff regarding her debt after March 2012.  Thus, the Court cannot at this time find as a matter of law that Ocwen did not violate § 1692g(b) of the FDCPA.

## CONCLUSION

For the reasons set forth above, the Court finds Ocwen is entitled to summary judgment on Plaintiff's TCPA claim, but genuine issues of material fact exist as to Plaintiff's FDCPA claims.  Thus, Ocwen's Motion for Summary Judgment [Doc. 37] is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED,** this 29th day of September, 2014.

S/  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

SSH/jrf

16